IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TAURUS S. CENTAUR,<br>Plaintiff, | :: <br> :: <br> :: | PRISONER CIVIL RIGHTS<br>42 U.S.C. § 1983 |
| v. | :: <br> :: <br> :: | |
| PRISONER TRANSPORTATION<br>SERVICES OF AMERICA et al.,<br>Defendants. | :: <br> :: <br> :: | CIVIL ACTION NO.<br>1:12-CV-2626-TWT-LTW |

## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff is confined at the Garrett County Detention Center in Oakland, Maryland. (Doc. 6.) Plaintiff seeks relief under 42 U.S.C. § 1983 for events that allegedly occurred during his transport from a jail in Pennsylvania to the jail in Cobb County, Georgia, in November 2010. The Court granted Plaintiff leave to proceed *in forma pauperis*, (Doc. 5), and Plaintiff filed an amended complaint, (Doc. 9). The amended complaint must now be screened under 28 U.S.C. § 1915A.

### I.   The 28 U.S.C. § 1915A Standard

Federal courts must screen a prisoner's complaint to determine whether the action: (1) is frivolous or malicious or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008). A district court also may dismiss a complaint if the alleged

facts do not state a plausible claim for relief. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). If a plaintiff cannot satisfy those requirements, or fails to provide factual allegations supporting a plausible claim, the complaint may be dismissed. *Id.* at 737-38.

## II. Plaintiff's Claims[1]

Neil Warren, the Sheriff of Cobb County, Georgia, contracts with Prisoner Transportation Services of America ("PTSA") to transport prisoners from other states to Cobb County. In November 2010, PTSA transported Plaintiff from a jail in Luzerne, Pennsylvania to the jail in Cobb County pursuant to that contract and an extradition waiver that Plaintiff executed. The trip lasted from November 19 to 24, 2010 and consisted of three stages.

The first stage began on November 19, 2010, when Defendants John Doe and Jane Doe, both employees of PTSA, transported Plaintiff by van from the jail in Luzerne to a jail in York County, Pennsylvania, with a four-hour stop at the federal prison at Fort Dix, New Jersey. Plaintiff does not know those PTSA employees' real names or where they reside, but he described the man (John Doe) as a Hispanic male

---

[1] The factual allegations are taken from Plaintiff's amended complaint, (Doc. 9), and presumed true for purposes of the § 1915A screening.

2

who identified himself as a Puerto Rican and former member of the U.S. Army and described the woman (Jane Doe) as a Caucasian female with dyed red hair. The Court refers to those two individuals as "John Doe" or "Jane Doe" or collectively as the "Doe Defendants."[2]

Before Plaintiff was placed in the transport van on November 19, 2010, he gave John Doe five medications that he was taking at that time, told John Doe that the medications included a water pill that caused him to have to use the bathroom frequently, and asked how that need would be accommodated on the trip. John Doe, the transport supervisor, told Plaintiff that they would stop every four hours for bathroom breaks. Handcuffs, leg irons, and waist and tether chains were then placed on Plaintiff and he was placed in the van. The van had no bathroom for prisoner use.

The van left Luzerne at approximately 11:00 a.m. and made its first stop at noon for lunch. The van then proceeded directly to Fort Dix, without stopping, and arrived there at approximately 4:00 p.m. Plaintiff told John Doe upon arrival that he needed to urinate badly. John Doe responded that Plaintiff would have to wait until they left Fort Dix because the prison would not allow Plaintiff to leave the van or use its bathrooms. Plaintiff remained in the van at Fort Dix for four hours, during which time

---

[2] Given Plaintiff's specific descriptions of both persons and his allegations regarding their employment with PTSA on the specific dates in question, the fictitious party pleading is proper. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (description of doe defendant should be specific and sufficient to identify him or her). If this Report and Recommendation is adopted, the Court will order PTSA to identify from its records the two employees who transported Plaintiff on the dates in question so that they may be served with process.

Plaintiff repeatedly asked the Doe Defendants to use the bathroom, but was refused. When Plaintiff asked to be taken to the military police station at Fort Dix, Jane Doe told him to shut up and quit complaining and then ignored him while she sent text messages. Plaintiff urinated on himself three times while in the van at Fort Dix.

After leaving Fort Dix, the van traveled nonstop to a jail in York County, where it arrived at approximately 9:00 p.m. Plaintiff was taken off the van and housed in the jail for just over twenty-four hours.

The second stage of the trip began at midnight on November 21, 2010, from the jail in York County and ended forty-four hours later, on November 22, at the PTSA hub in Paducah, Kentucky. The Doe Defendants operated the van that transported Plaintiff and other prisoners on this stage of the trip, driving through the following states: Pennsylvania, Maryland, Virginia, North Carolina, Tennessee, and Kentucky. As many as twelve prisoners were in the van during this stage of the trip.

The Doe Defendants stopped frequently during the forty-four hour stage to buy drinks, smoke cigarettes, and use the bathroom themselves, but Plaintiff remained shackled on the van the entire time and was not allowed bathroom breaks except on one occasion: approximately fourteen hours into the trip, Plaintiff was allowed off the van to use the bathroom in North Carolina. Plaintiff repeatedly told the Doe Defendants he needed to use the bathroom at other times, but was not allowed off the van again. Plaintiff was forced to defecate on himself and sit in his waste for more than twenty hours, all while tethered by chain to another prisoner. The prisoner to

4

whom Plaintiff was tethered was violent and mentally unstable, hit and kicked Plaintiff, and called him a racial slur. Plaintiff also wore handcuffs and leg irons for the entire forty-four hours. Those restraints were so tight that Plaintiff's hands became swollen to twice their normal size, his wrists and ankles were rubbed raw and bled, and he was in extreme pain. Plaintiff told the Doe Defendants of his pain and asked them to loosen his restraints, but they refused. Upon arriving at PTSA's hub in Kentucky late on November 22, 2010, Plaintiff was housed in a jail for approximately twenty-four hours, and the Doe Defendants left.

The third and final stage of the trip began on November 24, 2010, when Defendant Sergeant Perry, a PTSA employee, transported Plaintiff by van from the jail in Kentucky to the jail in Cobb County, Georgia. It was a seven-hour trip. Before leaving Kentucky, Sergeant Perry seized legal files Plaintiff had collected over a three-year period that were vital to one of Plaintiff's pending court cases. Sergeant Perry destroyed those legal files over Plaintiff's protest, telling Plaintiff that he did so for security reasons and stating "I think this is Black Power Crap and I will not allow it on my van." (Doc. 9 at 14.)

Plaintiff was handcuffed behind his back, placed in leg irons and a tether chain, and placed in a small, locked cage inside Sergeant Perry's van. Plaintiff could not move inside the small cage and was forced to sit on his hands because of the tether chain. Plaintiff complained of the extreme pain caused by sitting on his already swollen hands and wrists, but Sergeant Perry ignored him. Plaintiff cried from the

5

pain and other prisoners on the van yelled for Sergeant Perry to let Plaintiff out of the cage. Sergeant Perry refused. Plaintiff was restrained inside the cage for the entire seven-hour drive from Kentucky to Georgia.

Plaintiff contends that the Doe Defendants and Sergeant Perry were following PTSA policies in their treatment of Plaintiff during the trip from Pennsylvania to Georgia. Plaintiff further contends that those policies encouraged quick transport to maximize profits and placed PTSA's business interests over the welfare of transported prisoners like Plaintiff. In addition, Plaintiff alleges the vans on which he was transported were in disrepair, with broken chairs and climate control systems, as a result of PTSA policies. Plaintiff also alleges Sheriff Warren did not properly vet PTSA before hiring it to bring prisoners to Cobb County, used PTSA to save money, and should have used his own deputies to transport Plaintiff.

Liberally construing Plaintiff's amended complaint, Plaintiff asserts the following legal claims against some or all Defendants: deliberate indifference to a serious medical need, in violation of the Eighth and Fourteenth Amendments; inhumane confinement on the transport vans, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution; and violation of his right to access the courts under the First Amendment. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief regarding PTSA's allegedly inhumane treatment of prisoners it transports.

### III. Analysis

After careful review of Plaintiff's filings, the undersigned finds, as discussed further below, that Plaintiff has stated viable claims upon which relief can be granted against PTSA, Sergeant Perry, and the Doe Defendants. This Court may not be the proper venue for those claims, however. Generally, venue is proper in either a judicial district in which any defendant resides, if all defendants reside in the same state, or the district where a substantial part of the events or omissions underlying the claim occurred. 28 U.S.C. § 1391(b). Given the allegations in Plaintiff's amended complaint, a substantial part of the events or omissions underlying his viable claims did not occur in this Court's jurisdiction. The Court does not have sufficient information to determine whether it is a proper venue based on Defendants' residency. Defendants will possess such information and may raise any venue issue after service of process.

Plaintiff has not stated a viable claim against Sheriff Warren. A state or local government official is liable under § 1983 only if he "subjects, or causes to be subjected," any person to the deprivation of that person's rights under federal law. 42 U.S.C. § 1983. A supervisory official, like Sheriff Warren, "may not be sued under § 1983 for an injury inflicted solely by [his] employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To satisfy § 1983's causation requirement as to a supervisory official, the plaintiff must show that a "policy or custom . . . inflict[ed] the injury" and was "the moving force of the constitutional violation," *id.*,

7

or that the supervisory official personally participated in the alleged unconstitutional conduct, *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff has alleged only that the PTSA employees who transported him from Pennsylvania to Georgia were Sheriff Warren's agents, that Sheriff Warren did not properly investigate PTSA before contracting with it for fugitive prisoner transportation, and that Sheriff Warren should have used his deputies for the transport. Plaintiff's allegations against Sheriff Warren are conclusory. Plaintiff has alleged no facts supporting a finding that Sheriff Warren knew, either when he contracted with PTSA or at the time of Plaintiff's transport, of any problems like those Plaintiff allegedly experienced during his transport or that Sheriff Warren personally participated in Plaintiff's transport in any way. Nor has Plaintiff alleged facts supporting a finding that Sheriff Warren had any policy regarding the manner or means in which PTSA transported prisoners. Because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct" and Plaintiff's allegations do not plausibly support liability against Sheriff Warren, this Court finds that Sheriff Warren should be dismissed.³ *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Before discussing Plaintiff's claims against the other Defendants, two threshold issues must be addressed. First, it appears that Plaintiff was a pretrial detainee when

---

³ The Cobb County Sheriff's Department also should be dismissed as a defendant because Plaintiff, in his amended complaint, withdrew his claims against it. (Doc. 9 at 7.)

8

the events that are the basis of his claims occurred. If so, Plaintiff's claims regarding his confinement and medical care are governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997). The analytical standard is the same under both Amendments, however. *Id.*; *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985) ("[I]n regard to providing pretrial detainees with . . . basic necessities . . . the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").

Second, private, non-governmental entities and their employees generally are not state actors and, thus, are not liable under § 1983. *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993). "[W]here private actors are performing functions traditionally the exclusive prerogative of the state," however, they are considered state actors in the performance of those functions. *Id.* (citation omitted). Transportation and security of pretrial detainees and prisoners are functions that traditionally have been the exclusive prerogative of the government. *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("[W]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under section 1983." (quotation marks omitted)); *Farrow v. West*, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Thus, although PTSA is

9

a private entity, Plaintiff has alleged facts to support a plausible finding that PTSA and its employees may be held liable under § 1983 for their actions in connection with the transport of Plaintiff under a government contract.[4]

### A. Deliberate Indifference To A Serious Medical Need

Delayed or denied access to medical care for inmates may violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state such a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks omitted). A defendant is deliberately indifferent only if he: (1) subjectively knew of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct beyond gross negligence. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010).

---

[4] The U.S. Supreme Court recently held that employees of privately operated federal prisons are not liable under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Minneci v. Pollard*, 132 S. Ct. 617, 620, 626 (2012). As this is an action under § 1983 that does not involve federal officials or prisons, *Minneci* arguably does not apply. *See Winchester v. Marketti*, No. 11CV9224, 2012 WL 2076375, at *2-3 (N.D. Ill. June 8, 2012) ("*Minecci* [sic] deals solely with the question of when the judicial branch should recognize an implied cause of action under *Bivens*. It has absolutely no bearing on § 1983 cases, where Congress has already created a cause of action.").

10

Plaintiff has stated a viable claim against the Doe Defendants for deliberate indifference to a serious medical need. Plaintiff alleged that he was taking medication that made him urinate frequently, John Doe was aware of the medication when the trip began, and that the Doe Defendants were aware of his need to urinate and defecate during the first two stages of the trip. During the first stage, Plaintiff urinated on himself multiple times, further placing the Doe Defendants on notice of his serious need to leave the van for a bathroom break. The Doe Defendants ignored Plaintiff's repeated requests to use a bathroom, even during the second stage of the trip after Plaintiff had urinated on himself in the first stage. All of those allegations support a plausible finding that Plaintiff had a serious medical need obvious to a layperson and that the Doe Defendants were deliberately indifferent to that need.

Although a closer call, Plaintiff also has stated a viable claim against Sergeant Perry for deliberate indifference to a serious medical need. Plaintiff alleged that his hands and wrists were severely swollen when he was cuffed and placed on Sergeant Perry's van for the last stage of the trip and that Sergeant Perry was aware of that because he cuffed Plaintiff's hands behind his back. Plaintiff and other prisoners on the van yelled out during the trip for help for Plaintiff given the pain he was in, but Sergeant Perry took no action to alleviate Plaintiff's condition during the trip. Liberally construed, Plaintiff's allegations support a plausible finding that Sergeant Perry knew Plaintiff faced a serious risk of harm to his already injured hands and wrists if he were restrained in the manner that Sergeant Perry restrained him and then

11

left in that position, despite his and others' cries of pain, for seven hours. The allegations support a plausible finding that Sergeant Perry was indifferent to that risk.

Plaintiff has not stated a viable claim against PTSA for deliberate indifference to a serious medical need. As discussed in Part III.B, below, Plaintiff has sufficiently alleged that PTSA had a custom or policy of deliberate indifference to the general conditions of confinement on its transport vans that posed a substantial risk of harm to prisoners during transport. The allegations do not support a plausible finding, however, that PTSA had a custom or policy of deliberate indifference to prisoners' serious medical needs of which PTSA or its employees knew. Accordingly, Plaintiff's claim of deliberate indifference to a serious medical need should proceed against only the Doe Defendants and Sergeant Perry.

B. Conditions Of Confinement On The Transport Vans

Prisoners may not be deprived of basic human needs, such as food, clothing, shelter, sanitation, medical care, and reasonable safety. *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Hamm*, 774 F.2d at 1572 ("[S]tates violate the eighth amendment . . . if they fail to provide prisoners with reasonably adequate food, clothing, shelter, and sanitation."). To state a viable claim that the conditions of his confinement are unconstitutional, a prisoner must allege facts supporting a finding that: (1) the alleged deprivation is objectively serious, *i.e.,* there is a substantial risk of harm; (2) the defendant acted with deliberate indifference to that risk, *i.e.,* he or she engaged in more than simple negligence; and (3) the defendant's deliberate indifference caused

the constitutional deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Plaintiff has alleged facts that plausibly support a finding that the Doe Defendants deliberately deprived him of his basic human needs, particularly the need to eliminate bodily waste in a sanitary environment, while transporting him on PTSA's vans in November 2010. As noted above, the Constitution has long required that prisoners' basic sanitation needs be met. *See Chandler v. Baird*, 926 F.2d 1057, 1066 (11th Cir. 1991) ("[T]he right of a prisoner not to be confined . . . in conditions lacking basic sanitation was well established in 1986."); *Hamm*, 774 F.2d at 1572. Relieving oneself of bodily waste is a basic human need.

Despite knowing that Plaintiff was taking medication that caused him to urinate frequently and despite his repeated requests to use the bathroom after being on the van for several hours, the Doe Defendants allegedly refused to allow Plaintiff access to a bathroom. Plaintiff alleges that as a result he urinated and defecated on himself and had to sit in his waste for several hours. It is reasonable to infer from Plaintiff's detailed allegations that the Doe Defendants knew Plaintiff had relieved himself while confined on the van after they ignored his pleas, yet they continued to deny him access to a bathroom. Plaintiff alleges that the Doe Defendants also ignored his complaints about the tight restraints that caused his hands and wrists to swell and bleed, which further supports a finding of deliberate indifference. Plaintiff's allegations support a plausible finding that he suffered physical and mental harm as a result of the Doe

13

Defendants' alleged deliberate indifference to his basic human needs.[5] *See Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (holding that evidence that prisoners "did not receive adequate access to toilets to avoid soiling themselves, and . . . were not allowed to clean themselves thereafter . . . would establish deprivations sufficiently serious to satisfy the objective component of an Eighth Amendment claim"); *Pitcher v. Wackenhut Corp.*, No. 3:05-CV-0499-JCM VPC, 2007 WL 2695407, at *7 (D. Nev. Sept. 12, 2007) ("A reasonable jury could conclude defendants acted with deliberate indifference to a serious risk of harm to plaintiff by subjecting plaintiff to extreme temperatures and no bathroom breaks [while in the transport van].").

Plaintiff allegations also support a finding that a PTSA custom or policy caused the allegedly unconstitutional conditions of his confinement on the transport vans. Plaintiff alleged PTSA's business policies emphasize quick transport to maximize profits under its contracts and that those policies are implemented by employees like the Doe Defendants. The actions (and inaction) in which those employees allegedly engaged while transporting Plaintiff through several states over several days are consistent with Plaintiff's allegations regarding PTSA's policies and customary way of doing business. Plaintiff's additional allegations that the vans on which he traveled were poorly maintained further support a finding that the alleged deliberate

---

[5] To the extent Plaintiff claims the Doe Defendants were deliberately indifferent to his safety by chaining him to a prisoner who allegedly hit him and called him a racial slur, that claim fails. Plaintiff did not allege facts supporting a plausible finding that either Defendant knew, at any time, that the other prisoner posed a risk of serious harm to Plaintiff or that Plaintiff suffered any such harm.

14

indifference to the conditions of his confinement resulted from a PTSA custom or policy. At this early stage of the case, Plaintiff has stated a viable claim against PTSA and its employee-defendants that the conditions of Plaintiff's confinement on the transport vans were unconstitutional.

C. Access-to-Courts

Prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Al-Amin v. Smith*, 511 F.3d 1317, 1325 (11th Cir. 2008). To state a viable claim that such access has been denied, a plaintiff must allege that he has suffered actual harm regarding prospective or existing litigation, i.e., that "an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see Al-Amin*, 511 F.3d at 1332-33 ("In order to show actual injury, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." (quotation marks omitted)).

Plaintiff's allegations regarding Sergeant Perry's destruction of his legal files that he had researched and collected for three years do not state a viable claim that Sergeant Perry violated his right to access the courts. While Plaintiff alleged that the paperwork was "vital to a pending case," (Doc. 9 at 14), he did not allege any injury to any pending or prospective case. The prisoner in *Al-Amin* asserted only "a conclusory allegation that the mail opening compromised his cases and [did] . . . not

15

identify how any legal matters specifically were damaged," which was an insufficient allegation of "the requisite actual injury" for an access-to-courts claim. *Al-Amin*, 511 F.3d at 1333. Similarly, Plaintiff alleged only that Sergeant Perry destroyed unidentified legal work and "provide[d] no specific cases or claims being pursued, nor any deadlines missed, nor any effect on [Plaintiff's] . . . legal claims" in any case. *See id.*; Doc. 9 at 14. Because Plaintiff's allegations do not support a plausible finding that he suffered actual injury as a result of Sergeant Perry's destruction of legal files, his access-to-courts claim should be dismissed.

## IV. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the following claims be **ALLOWED TO PROCEED**: (1) Plaintiff's claim of deliberate indifference to a serious medical need against Defendants John Doe, Jane Doe, and Sergeant Perry; and (2) Plaintiff's claim of inhumane conditions of confinement against Defendants PTSA, John Doe, and Jane Doe. **IT IS RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED** and that Defendants Cobb County Sheriff's Department and Sheriff Neil Warren be **DISMISSED** from this action. If this Report and Recommendation is adopted, the undersigned will enter an order regarding service of process on the Defendants against whom claims are allowed to proceed.

**SO RECOMMENDED**, this 6 day of November, 2012.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

16